UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 12 CR 658 |
| v. | ) | |
| | ) | Violations: Title 18, United States Code, |
| NICHOLAS DEMARS, et al. | ) | Sections 1341 and 1346 |

**MOTION TO DISMISS COUNTS ONE THROUGH FIVE OF THE INDICTMENT**

The Defendant, Nicholas Demars, by his undersigned attorney, Elliot M. Samuels, pursuant to Rule 12(b)(3)(B) moves for the entry of an Order dismissing Counts One through Five of the captioned indictment, and submits the following memorandum in support thereof.

**ARGUMENT**

Mr. Demars is charged in the indictment with ten counts of mail fraud (18 U.S.C. 1341) predicated upon "a scheme or artiface to deprive [the victim firm] of the intangible right of honest services" in violation of 18 U.S.C. 1346.[1]

Although not specifically alleged, it is the prosecution's theory that Mr. Demars' liability hinges on and aiding and abetting theory because he was never an employee of the "Victim Firm." Paragraph 1c of the indictment reads as follows:

> "Defendant NICHOLAS DEMARS was the President of NS Mater, a firm that provided personnel and technology to businesses to assist in office automation, web and database development, and general information technology. DEMARS provided NS Mater contract employees to perform work in the information technology department at the Victim Firm."

The indictment further notes that the co-defendant, David Tresch, who was employed by the "Victim Firm" "had a fiduciary duty to provide honest services to the Victim Firm" (Para 1(b)). To avoid potential barriers to this prosecution raised by *Skilling v. U.S.*, 561 U.S.40 (2010), the indictment alleges that from 2004 to 2011 Mr. Demars engaged in a kickback scheme

---

[1] The indictment also contains forfeiture allegations against Mr. Demars, including his family's primary residence.

in which over one million dollars of the moneys received from the "Victim Firm" were remitted either directly to Mr. Tresch or to his wife, even though she performed no services for Mr. Demars' company (Ind. Paras. 5, 8).

There is no allegation in Counts 1 - 5 that the invoices submitted to the "Victim Firm" were inflated, or that the "Victim Firm" did not receive the services it bargained for.

The issue that is now before the Court is whether a person can be prosecuted for mail fraud based upon a violation of "honest services" when: (a) that person had no employment or fiduciary relationship to the alleged victim, and (b) that person provided the goods and services bargained for at fair prices? The 7th Circuit has recently ruled that mail and wire fraud statutes are not violated by the machinations (deceptions) of a defendant who nevertheless provided the victim, in that case the City of Chicago, a fair price, for the services it bid on. See, *U.S. v. Fenzl*, 670 F.3d 778 (7th Cir. 2012).

Consistent with *Fenzl*, the 7th Circuit recognizes that Section 1341 "does not make a federal crime of every deceit." "Most frauds are coverred by state law rather than Section 1341." See, *U.S. v. Walters*, 997 f.2d 1219, 1223-4 (7th Cir. 1993) (citation omitted).

In this case, from 2004 to 2011, as alleged in the indictment, Mr. Demars company provided contract employees to perform work at the "Victim Firm" (Ind. Paras. 3 – 7). Mr. Demars' company invoiced the "Victim Firm" for these services at a markup of about 100% (Ind. Para. 7). The payments to Mr. and Mrs. Tresch came from the gross profits generated by Mr. Demars' company.

While this conduct may be viewed as deceitful or violative of standards of business morality, nevertheless, this conduct does not equate with criminality simply because Mr. Demars never intended to "get something for nothing" *U.S. v. Regent Office Supply Co.*, F.2d 1174, 1177, 1178 (2nd Cir. 1970). The fact remains that Mr. Demars did not defraud the "Victim Firm"

2

of the product or the price his company was offering to it.  CF:  *Regent Office Supply Co.*, at 1181.  Moreover, as the *Regent Office Supply Co.* case explains, a scheme to deceive is not tantamount to a scheme to defraud.  *Id* at 1179 – 1182.

Neither Mr. Demars nor his company, according to the indictment, were under an obligation to refrain from making payments to Mr. Tresch.  While the "Victim Firm" may have been mis or uninformed as to the uses of the money it paid to Mr. Demars, nevertheless, it was not deprived of property as required under the federal mail fraud statute.  *Fenzl*, *supra*, at 780 – 782.  *See also*, *U.S. v. Ashman*, 979 F.2d 469, 479 (7th Cir. 1992).[2]  *See also*, Sher, "Is a Scheme to Deprive Another of the 'Right to Control Spending' Mail Fraud?" 86 Criminal Law Reporter 57.

Neither by direct allegations nor by inference can it be said that Counts 1 – 5 of the indictment adequately allege that the "Victim Firm" lost property, i.e., money, as a result of Mr. Demars' conduct.  To the contrary, the "Victim Firm" received what it bargained for.  Mr. Demars' conduct neither contemplated nor intended the "Victim Firm" to be deprived of its property any  more than did the business practices identified in *Fenzl*, *Walters*, *Ashman*, or *Regent Office Supply Co.* did.  For these reasons Mr. Demars respectfully moves for the entry of an Order dismissing Counts 1 – 5 of the captioned indictment.

                                                Respectfully submitted,

                                                */s/ Elliot M. Samuels*

Elliot M. Samuels
333 W. Wacker Drive
Suite 2000
Chicago, IL  60606

---

[2] This stands in contrast to the allegation made in Counts 6 – 10 that the defendants submitted "false invoices" to the "Victim Firm."  Mr. Demars denies that he knowingly participated in such a scheme but it is acknowledged that the allegation of "false invoices" is within the purview of the federal mail fraud statute.